# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| **Joe Hand Promotions, Inc.,** | ) | |
| Plaintiff, | ) | |
|  | ) | |
| v. | ) | Case No: 10-40029-TSH |
|  | ) | |
| **Rajan, et al.,** | ) | |
| Defendants | ) | |

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR ASSESSMENT OF DAMAGES
### July 28, 2011

**Hillman, M.J.**

### Background

This case involves allegations of cable theft. Plaintiff, Joe Hand Promotions, Inc., filed the instant suit against Defendants Rajan, et al. and alleged in its Complaint, dated February 1, 2010, four (4) claims for relief. Plaintiff asserts that Defendants[1]:

(1) violated The Communications Act of 1934, 47 U.S.C. §605 ("§605")

(2) violated The Cable and Television Consumer Protection and Competition Act of 1992, 47. U.S.C. §553(a)(1),

(3) converted Plaintiff's property, and

(4) engaged in unfair business practices in violation of Massachusetts General Laws Chapter 93A, Section 2 and 11.

An entry of default was entered against Defendants on April 8, 2011 for failure to comply

---

[1] To date, two of the original four Defendants, husband and wife, Rajalaksnmi Rajan and Rajan Viswanathan, have filed for bankruptcy and are no longer parties to this action. (Defendant's Suggestion of Bankruptcy entered 3/30/2011). Two Defendants remain: Shyamala Rajan and Manomay, Inc.

with a Court Order entered on February 24, 2011 compelling Defendants to serve discovery requests upon the Plaintiff within 14 days. Defendants in default are "taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated." *Charter Communications Entertainment I, LLC v. Burdulis*, 367 F.Supp.2d 16, 19 n.2 (D. Mass. 2005), *aff'd sub nom. Charter Communications Entertainment I, DST v. Burdulis*, 460 F.3d 168 (1st Cir. 2006). Defendants are "not held to admit facts that are not well-pleaded or to admit conclusions of law." *Zuffa, LLC v. Al-Shaikh*, 2011 WL 1539878 at *3 (S.D.Ala. 2011) (*citing Tyco Fire & Sec., LLC v. Alcocer,* 218 Fed. Appx. 860, 863 (11th Cir. 2007). The allegations must state a cause of action and the court must find "that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Id.*

The main issue in this case is how the Court should determine damages against the defaulting Defendants. The Court must determine Defendants' liability for each claim, then must assess damages by considering the type and amount of damages to be awarded, and whether enhanced damages, attorney's fees, and costs are appropriate.

For the reason's set forth below, I find for the Plaintiff on Counts 2 and 3 of the Complaint, and enter judgment against Defendants respectively for violating §553 and for converting Plaintiff's property. As to Count 1, the §605 allegation, and Count 4, alleging a violation of Massachusetts General Laws Chapter 93A §§2 and 11, the Court finds for Defendants. The Court concludes that §553 applies to this case, and further that Defendants' conduct demonstrated the willfulness and purpose of "commercial advantage" necessary for enhanced damages. The Court also finds that Plaintiff is entitled to an award of costs and reasonable attorney's fees under §553.

## Facts

The following facts are taken as true. Plaintiff had exclusive, nationwide commercial distribution rights to the *Ultimate Fighting Championship 81: "Breaking Point"* ("the Program"), televised on February 2, 2008. (Compl. at ¶12). Plaintiff entered into separate sublicensing agreements with commercial establishments to publicly display the Program. (Compl. at ¶13). On February 2, 2008, private investigator, David MacDonnold, entered Defendants' commercial establishment, Dakshin, at 672 Waverly St. in Framingham, MA at 12:15am without paying a cover charge. (MacDonnold Aff. at 1). MacDonnold observed two "36" televisions screens above the bar displaying the UFC pay-per-view fight featuring Sylvia v. Nogueria. *Id.* at 1. The capacity of Dakshin was approximately 100 people. *Id.* While at the establishment, MacDonnold made three separate head counts of patrons totaling 18, 25, and 27. *Id.* At no time did Dakshin lawfully license the Program from Plaintiff. (Joe Hand, Jr. Aff. at ¶7). As exhibited in Joe Hand Promotions' Rate Card, as an establishment "with a maximum fire code occupancy capacity of 100 persons," the sublicense fee for Dakshin would have been $875.00. (*Id.* at ¶8 and Ex. 2 at 1).

Plaintiff has submitted a memorandum in support of its motion for an assessment of damages. (Pl['s] Mem. at 1). Plaintiff has asked for the maximum statutory allotment under §605 of $10,000, and enhanced damages of $100,000. In addition, Plaintiff asks for an award of attorney's fees of $4,675 and costs of $515.50. (Szumowski Supplemental Aff. at 1).

## Discussion

Plaintiff's Complaint states four (4) causes of action and requests damages specific to a violation of §605. The Court's analysis looks first at Count 1 and 2 and then 3 and 4 in turn. For the reasons set forth below, the Court finds liability under §553, but not §605, and applies

damages accordingly. The Court finds liability under Count 3 for conversion and no liability under Count 4, for violating Massachusetts General Laws 93A §§ 2 and 11.

**A. The Applicability of Sections 553 and 605**

Circuits are split on the applicability of §553 and §605 for cable service theft violations. "[P]laintiff may not recover under both Section 553 and Section 605 for a single violation." *J & J Sports Productions, Inc. v. Mendoza-Govan*, 2011 WL 1544886, at *7 (N.D.Cal. Apr. 25, 2011); *See also J & J Sports Prods., Inc. v. Manzano,* 2008 WL 4542962, at *2 (N.D.Cal. Sept. 29, 2008) (one violates §553 if he intercepts a cable signal, but violates §605 if he intercepts a satellite broadcast. One cannot violate both with a single act of interception). The two statutes share similarities but have notable differences including more potential recovery for plaintiffs under §605. *Burdulis*, 367 F.Supp.2d at 18. §553 provides that, "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator. . . ." The Cable and Television Consumer Protection and Competition Act of 1992, 47 U.S.C. §553(a)(1) (1992). In prohibiting unauthorized receipt of radio communications, §605 reads that "[n]o person receiving . . . any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof . . . ." The Communications Act of 1934, 47 U.S.C §605(a) (1996). The applicability of §553 to the instant case is clear due to the statutes specifically referencing its applicability to theft over cable systems. Whether such conduct constitutes a violation under §605 requires a more in-depth analysis.

The First Circuit affirmed an analysis of the inquiry in a case involving similar allegations and concluded that §605 does not apply to cable theft violations. *See generally Burdulis*, 460 F.3d 168 (1st Circ. 2006). With a thorough reading of the statute and legislative

history, the court noted that amendments to §605 removed most "wire" references and that §605 applied more appropriately to the theft of programming signals traveling through the air, or radio signals. *Burdulis*, 460 F.3d at 175. The court affirmed the lower court's decision that §605 "does not apply to the theft of communications transmissions over a cable wire." *Burdulis*, 367 F.Supp.2d at 26. To hold otherwise would imply that §553 prohibits only a very small range of conduct of local cable programming theft rather than targeting the much larger scale problem of cable piracy that Congress more likely intended to reach when adopting §553. *Burdulis*, 460 F.3d 168, at 167. In the instant case, Plaintiff's Complaint fails to specify the type of interception alleged, whether "over a cable wire" or the interception of radio signals. In the absence of evidence to the contrary, the Court applies the analysis used for cable theft over a cable system. Having decided that §553 is applicable in this case, and not §605, the Court proceeds to the assessment of Plaintiff's damages under §553.

### B.  Assessment of Damages

Plaintiff has filed detailed affidavits and exhibits to demonstrate the damages incurred from Defendants' violation. At a hearing before the Court on June 13, 2011, counsel for Plaintiff had the opportunity to present her argument for requested damages. The Court has sufficient information to make an informed decision regarding appropriate damages.

Courts use varying approaches to assess damages for cable theft violations often starting with Plaintiff's request for damages[2]. Plaintiff requested the maximum statutory damages allowed under §605 of $10,000 and maximum enhanced damages for the willful nature of Defendant's conduct of $100,000, attorney's fees and costs.

---

[2] In the case of defaulting defendants, allegations of "damages are not deemed admitted in the context of a default judgment," and it is the plaintiff's burden to establish any entitlement to recovery. *Premium Sports Inc. v. Alzate,* 2011 WL 1240558 at *4 (E.D.N.Y. Feb. 25, 2011).

5

For the reasons stated above, §553 will be used to assess damages in this case. §553 provides "an award of statutory damages for all violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just." 42 U.S.C. §553(c)(3)(A)(ii). Should "the court find that the violation was committed willfully and for purposes of commercial advantage . . . the court in its discretion may increase the award of damages . . . by an amount of no more than $50,000. 42 U.S.C. §553(c)(3)(B).

In considering Plaintiff's request for the statutory maximum, the Court looks to other courts' assessment techniques for comparison. "Some courts have used statutory damages to approximate actual damages, but also include additional sums to deter future violations. *Burdulis*, 367 F.Supp.2d at 27 (*citing Cablevision Systems New York City Corp. v. Rosa,* 2002 WL 1446942, at *5 (S.D.N.Y. Apr. 3, 2002)). Other courts have awarded flat sums rather than approximating actual damages and have sometimes reflected the statutory minimum or maximum award. The statutory maximum has been "awarded where the defendants have defaulted, failed to contest damages, showed willful conduct, or stole services valued near the maximum damage award." *Id.* at 27. Some courts have decreased awards when defendant's violation was considered minor. *Id.* at 28. *See Kingvision Pay-Per-View v. Langthorne,* 2001 WL 1609366, at *1 (D.Mass. Nov. 28, 2001) (statutory minimum awarded for a single unauthorized broadcast by an small establishment that did not charge a cover).

The First Circuit has adopted the approach that statutory damages should be calculated solely as an estimate of actual damages, without additional deterrence consideration. *Burdulis*, 460 F.3d at 181 (*citing Comcast of Mass. I, Inc. v. Naranjo,* 303 F. Supp.2d 43 (D.Mass. 2004)). As noted in *Naranjo*, Congress separately addressed the need for deterrence in other statutory provisions of §553. *See generally Naranjo*, 303 F. Supp.2d 43. For example, Congress focused

on deterrence when enacting §553(c)(3)(B), which authorizes enhanced damages for willful conduct. This estimation approach "best satisfies the command of the statute and the judicial interest in promoting predictability and transparency.'" *Burdulis*, 460 F.3d at 181 (*citing Burdulis,* 367 F.Supp.2d at 28).

The baseline to estimate actual damages is the licensing fee that Defendants would have paid to the Plaintiff to display the Program legally. Plaintiff, in its Rate Card, sets out that Dakshin, with a capacity of 100 persons, would command a rate of $875 to publicly display the Program. (Ex. 2 at 1). The Court finds that a reasonable estimate of actual damages to Plaintiff is the licensing fee of $875 that was lost due to Defendants' failure to purchase a sublicense from the Plaintiff to display the Program. The Court also recognizes that a deterrent effect is important when awarding damages, as it "put[s] violators 'on notice that it costs less to obey the ... laws than to violate them." *Joe Hand Promotions, Inc. v. Salinetti*, 148 F.Supp.2d 119 (D.Mass. 2001) (*citing Rodgers v. Eighty Four Lumber Co.,* 623 F.Supp. 889, 892 (W.D.Pa. 1985)). Following First Circuit precedent, the Court finds that Plaintiff's request for maximum statutory damages as a deterrent is not warranted. Any additional award for deterrence is to be assessed under enhanced damages.

## C. Appropriateness of Enhanced Damages

In determining whether enhanced damages are appropriate under §553(c)(3)(B), the Court must determine whether "the violation was committed willfully and for purposes of commercial advantage . . . ." The Court then may increase the award of damages . . . by an amount of no more than $50,000. 42 U.S.C. §553(c)(3)(B).

The Court looks first to whether willfulness is present in the violation. Courts often assume willfulness in cable theft violations as they "require affirmative illegal steps to be taken."

*Burdulis,* 367 F.Supp.2d at 29. *See Time Warner Cable of New York City v. Googies Luncheonette, Inc.,* 77 F.Supp.2d. 485, 490 (S.D.N.Y. Dec. 21, 1999) (noting that "signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems"). Due to the nature of the violation and the facts deemed admitted by default, Defendants' conduct in the instant case easily meets the "willful" threshold in their violation of §553.

The second factor required for enhanced damages involves whether the violation was committed for "purposes of commercial advantage or private financial gain." 42 U.S.C. §553(c)(3)(B). Plaintiff does not provide evidence of Defendant's increased revenue from showing the program, but does establish the commercial nature of the restaurant Dakshin. By further demonstrating the indirect commercial advantage to Defendant by displaying the Program by avoiding a licensing fee, Plaintiff meets its burden showing that Defendants meet "commercial advantage" required for enhanced damages under §553. The Court finds that Defendants committed the violation "willfully" and "for purposes of commercial advantage" and enhanced damages are appropriate.

### D. Methodology for Assessing Enhanced Damages

Not surprisingly, courts also disagree on how to determine the amount of enhanced damages to award under §553 or §605. *Burdulis,* 367 F.Supp.2d at 32. "[T]he amount … appears to be somewhat arbitrary and, for the most part, not based on any specific articulated factors." *Id*. at 33. The court in *Entertainment by J & J, Inc. v. Friends II, Inc,* which involved the broadcast of a boxing match telecast by a bar, "listed the following factors to be considered in awarding enhanced damages: (1) repeated violations over time, (2) substantial monetary gains, (3) significant actual damages, (4) advertising for the stolen programming, and (5) charging a cover

or a premium for drinks or food." *Id.* at 32, n.21 (*citing Friends II*, 2003 WL 1990414, at *4 (S.D.N.Y. 2003)).

The amount of enhanced damages courts have awarded varies considerably within the context of cable theft violations at commercial establishments. *Compare Friends II* (awarding $3,000 for a single violation); *Kingvision Pay-Per-View v. Recio,* 2003 WL 21383826, at *5 (S.D.N.Y. June 11, 2003) (awarding $2,000 for a single violation where defendant profited from selling food and drink); *and Entertainment by J&J, Inc. v. Nina's Rest. & Catering,* 2002 WL 1000286, at *3 (S.D.N.Y. May. 09, 2002) (awarding $2,500 for single violation), *with Jasper Grocery,* 152 F.Supp.2d at 442 (awarding $10,000 despite lack of evidence of repeated violations or substantial monetary gains by the defendant), *and Joe Hand Promotions, Inc. v. Pete,* 1999 WL 638215 at *2 (N.D.Cal. Aug. 17, 1999) (awarding $5,000 for a single violation to deter future piracy of pay-per-view events though defendant did not charge a cover and there were only 8 patrons present); *Salinetti,* 148 F.Supp.2d at 123 (adding $2,500 in enhanced damages where a club illegally exhibited a boxing match to patrons; such conduct was not particularly egregious); *and TCI Cablevision of New England v. Pier House Inn, Inc*, 930 F.Supp. 727, 737 (D.R.I. 1996) (enhancing damages by $5,000 where a hotel illegally intercepted cable service and advertised free cable to obtain a competitive advantage).

In the present case, there is no evidence that Defendants repeatedly violated §553. Patrons were not charged cover on the night the Program was aired, and the number of persons in the bar totaled 27 at its highest during the broadcast. Plaintiff's request for the maximum statutory amount of enhanced damages against Defendants is out of proportion with the violation. Following similar enhanced damage awards given in the district, the Court finds that $2,000 is a reasonable award of enhanced damages under the circumstances.

### E. Attorney's Fees and Costs

In addition to statutory and enhanced damages, attorney's fees and costs have additionally been requested by Plaintiff.

The court "may direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 42 U.S.C. §553(c)(2)(C). Plaintiff submitted attorney's fees totaling $4,675 reflecting an hourly rate of $250 for 18.7 hours and costs of $515.50. (Szumoswki Supplemental Aff. at 1)³. Accordingly, the Court will grant attorneys' fees and costs in the amount of $5,190.50, which are reasonable under the circumstances.

### F. State Claims: Liability

Plaintiff's Complaint includes two state law claims: Count 3, the tort of conversion and Count 4, a violation of Massachusetts General Laws, Ch. 93A. The court must first assess whether the claims have been well-pleaded and also whether the claims are pre-empted under federal law.

### 1. Conversion

To assert a conversion claim under Massachusetts law, Plaintiff must show that:

> "(1) the defendant intentionally and wrongfully exercised control or dominion over the personal property; (2) the plaintiff had an ownership or possessory interest in the property at the time of the alleged conversion; (3) the plaintiff was damaged by the defendant's conduct; and (4) if the defendant legitimately acquired possession of the property under a good-faith claim of right, the plaintiff's demand for its return was refused."

*Evergreen Marine Corp. v. Six Consignments of Frozen Scallops*, 4 F.3d 90, 95 (1st Cir. 1993).

Plaintiff's Complaint states that Plaintiff had "the exclusive nationwide commercial distribution (closed-circuit) rights" to the Program and entered into sublicense agreements with commercial establishments to publicly display the broadcast. (Compl. at ¶12-¶13). While the

---

³ In calculating reasonable attorney's fees, the First Circuit uses the lodestar approach which uses the hours reasonably expended multiplied by a reasonable hourly rate. *See Burdulis,* 367 F.Supp.2d at 32.

general rule is that conversion "relates to tangible rather than intangible property," *John G. Danielson, Inc. v. Winchester-Conant Properties, Inc*., 186 F.Supp.2d 1, 28 (D.Mass. 2002), in Massachusetts, conversion has been found where the subject was intangible property in a cable theft case. *See Quincy Cablesystems, Inc. v. Sully's Bar*. 650 F.Supp. 838, 848 (D.Mass. 1986). Plaintiff's exclusive rights gave them possession of the transmission of the broadcast of the Program at the time of the alleged conversion. Defendants' display of the Program without authorization by Plaintiff was an intentional and wrongful exercise of control over Plaintiff's property. Plaintiff suffered damages from Defendant's conduct (Compl. at ¶1-25) and its damages have been calculated above in Sections B-D. Plaintiff's Complaint meets the requirements to sufficiently plead a claim of conversion (Count 3).

Having found that Plaintiff has made out a sufficient conversion claim, the Court analyzes whether conversion in the cable theft context is pre-empted by federal law. "[F]ederal law may preempt state law either explicitly or implicitly." *John G. Danielson, Inc. v. Winchester-Conant Properties, Inc.* 186 F.Supp.2d 1 (D.Mass. 2002) (*citing Morales v. Trans World Airlines, Inc., 504* U.S. at 383 (1992)). Section 605 and §553 of the Communications Act acknowledge that states may regulate the area with laws consistent with the federal statute establishing that federal law does not constitute total regulation of the field. Preemption of state laws, however, may also be implicit from other federal laws. Some courts have found that conversion in the cable theft context is preempted by the Copyright Act, for example, because the elements involved "would not establish qualitatively different conduct by defendants than the elements for an action under the Copyright Act." *Quincy Cablesystems, Inc,* 650 F.Supp. at 850. The instant case is distinguishable because a particular plaintiff in *Quincy* had standing to bring a Copyright claim as he allegedly held a copyright to the displayed programming, a fact not

alleged in the Complaint by Plaintiff. Where Plaintiff does not allege ownership of a copyright, the Copyright Act does not then preempt a state law conversion claim. Because §605 and §553 explicitly leave room for state law claims to address cable theft violations, this case differs from cases where preemption of conversion claims has applied. Plaintiff's conversion claim stands. With a sufficiently stated claim, the court finds the defaulting Defendants liable for conversion.

Additional damages are not available under Plaintiff's conversion claim, however. The injury Plaintiff sustained in the §553 claim and the conversion claim is the same, and awarding damages under conversion would amount to overcompensation. *Dopp v. HTP Corp.,* 947 F.2d 506, 517 (1st Cir.1991) ("[T]he law abhors duplicative recoveries…. [A] plaintiff who is injured by reason of a defendant's behavior is… entitled to be made whole-not to be enriched" ). *See also Kforce, Inc. v. Surrex Solutions Corp*. 436 F.3d 981, 984 (8th Cir. 2006) (citing *Norber v. Marcotte,* 134 S.W.3d 651, 661 (Mo.Ct.App.2004)) ("A party cannot be compensated for the same injury twice.... Although a plaintiff is entitled to proceed on various theories of recovery, ….a plaintiff may not be made more than whole or receive more than one full recovery for the same harm").

### G. Chapter 93A Liability

Plaintiff's Ch. 93A claim requires the same analysis regarding whether a claim sufficiently states a cause of action and whether the state law claim is preempted by federal law. Massachusetts General Laws Chapter 93A, §2(a) makes unlawful any "[u]nfair ... acts or practices in the conduct of any trade or commerce." *Kilbride v. Oteri*, 2005 WL 1156206, at *3 (Mass. Super. Ct. April 20, 2005). It has been established in the district that Ch. 93A is not preempted by federal law with the Communications Act. *See generally Quincy Cablesystems, Inc. v. Sully's Bar, Inc*., 684 F.Supp. 1138. (D.Mass. 1988.) The Ch. 93A inquiry in the case

concludes here, however, as Plaintiff fails the first prong by failing to state a claim.

To make out a sufficient claim under 93A §11, plaintiff and defendant "must be engaged in a business relationship for a claim to lie." *L.B. Corp. v. Schweitzer-Mauduit Intern. Inc.,* 121 F.Supp.2d 147, 152 (D.Mass. 2000) (*citing Reisman v. KPMG Peat Marwick LLP,* 965 F.Supp. 165, 175, n. 14 (D.Mass. 1997)); *See also John Boyd Co. v. Boston Gas Co.,* 775 F.Supp. 435, 440 (D.Mass. 1991) (noting the Massachusetts Supreme Judicial Court "has stressed the existence of some contractual or business relationship between the parties as a precursor to liability under Chapter 93A"). While *Quincy* is an example of a successful Ch. 93A claim that did not "address the relationship between the parties, or lack thereof," the case is an exception to established precedent within the state. Plaintiff's Complaint states that both parties "engaged in trade or commerce" (Compl.at ¶31) but does not state that parties engaged in business practice together.[4] Plaintiff's Ch. 93A claim fails for failing to state a claim.

## Conclusion

For the foregoing reasons, the Plaintiff's Motion for Assessment of Damages is **GRANTED** in part and **DENIED** in part.

1) Plaintiff is **GRANTED** statutory damages under The Cable and Television Consumer Protection and Competition Act of 1992, 47. U.S.C. §553(a)(1), in the amount of $2,875; ($875 statutory damages and $2,000 in enhanced statutory damages)

2) Plaintiff's request for an award of attorneys' fees and costs is **GRANTED** in the amount of $5,190.50.

3) Defendant is also liable for a Massachusetts state claim of conversion. Additional damages are not applicable.

---

[4] At a hearing on assessment of damages on June 13, 2011, Plaintiff's counsel noted it believes Defendants may have set up a residential cable package with Plaintiff but did not submit evidence to confirm nor amend their complaint to include allegations of a business-to-business relationship between parties.

4) Defendant is not liable under Count IV for violating Massachusetts General Laws Ch. 93A for Plaintiff's failure to state a claim.

END.

/s/Timothy S. Hillman
TIMOTHY S. HILLMAN
MAGISTRATE JUDGE
